366 So.2d 544 (1978)
Harold E. DRIPPS and Pearl Irene Dripps
v.
Maxie Ann DRIPPS.
No. 62185.
Supreme Court of Louisiana.
November 13, 1978.
Concurring Opinion January 26, 1979.
Camp, Carmouche, Palmer, Barsh & Hunter, J. A. Delafield, Lake Charles, for defendant-appellant.
Raggio, Farrar, Cappel & Chozen, Stephen A. Berniard, Jr., Lake Charles, for plaintiffs-appellees.
SUMMERS, Justice.
Walter Eugene Dripps and Maxie Ann Dripps were husband and wife. Two children were born of this union, Jason Harold and Jennifer Amanda. Walter Eugene Dripps died on March 11, 1975. In addition to his wife and the two minor children, he was survived by his father and mother, Harold E. and Pearl Irene Dripps.
At that time Section 572 of Title 9 of the Revised Statutes,[1] insofar as pertinent here, provided that if one of the parties to a marriage died, and there were minor children of such a marriage, the parents of the deceased, without custody of the children, could have reasonable visitation rights to the children of the marriage during their minority, if the court in its discretion found that such visitation rights would be in the best interest of the children.
Relying upon this authority Harold E. and Pearl Irene Dripps, paternal grandparents of the minor children, filed a petition in the Calcasieu Parish District Court on June 1, 1977 seeking a judgment establishing reasonable visitation privileges with the *545 minor children. A rule was issued commanding Maxie Ann Dripps to show cause why reasonable visitation privileges should not be granted to the paternal grandparents of the minor children.
Prior to a hearing on this rule, on July 1, 1977, Maxie Ann Dripps, the mother of the children, married James Kerney Sonnier. When the hearing was held on July 20, 1977 the mother agreed and stipulated that the grandparents would have certain visitation rights with the children. The agreement was incorporated into a judgment officially rendered by the trial judge on July 22, 1977.
Thereafter, on September 16, 1977, the District Court in St. Landry Parish approved the adoption of the minors Jason Harold and Jennifer Amanda Dripps by James Kerney Sonnier, and the court ordered that the names of the minors be changed to Jason Harold and Jennifer Amanda Sonnier.
Then, on October 24, 1977, James Kerney Sonnier and his wife, the former Maxie Ann Dripps, ruled the grandparents, Harold E. and Pearl Irene Dripps, into court in Calcasieu Parish to show cause why the visitation rights granted in the July 22, 1977 judgment should not be revoked as a result of Sonnier's marriage to Maxie Ann Dripps and by virtue of the fact that Sonnier became the adoptive father of the children subsequent to the decree granting visitation rights to the grandparents.
To support this position the Sonniers rely upon the authority of Article 214 of the Civil Code as it existed at the time.[2] Insofar as pertinent here, the Article provides that the adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent. The article further provides that if the adoptive parent is married to a blood parent of the adopted person, the relationship of the blood parent and blood relatives of the adopted person are unaffected by the adoption. Otherwise, upon adoption, the blood parent or parents and all other blood relatives of the adopted person are relieved of all their legal duties and divested of all of their legal rights with regard to the adopted person.
On March 3, 1978 the trial judge rendered judgment in favor of the grandparents, rejecting the demands of the Sonniers that visitation rights of the grandparents be revoked. The Sonniers appealed to the Third Circuit. While the case was pending there the trial judge filed written reasons for his judgment of March 3, 1978, in which he declared that Article 214 of the Civil Code was unconstitutional as applied in this case.
Upon receipt of the reasons assigned by the trial judge, the Sonniers moved that their appeal be transferred to this Court, the trial court having declared a law of this State unconstitutional. The motion to transfer was unopposed and the appeal was transferred to this Court on May 3, 1978 as required by Section 5(D) of Article V of the Constitution mandating that appeals shall be to the Supreme Court if a law or ordinance has been declared unconstitutional.
In the legislative session then in progress, Article 214 of the Civil Code was amended by Act 458 of 1978,[3] effective September 8, 1978. Article 214 was unchanged by the amendment except to provide that when the adoptive parent was not married to a blood parent of the adopted person, the blood parent or parents and all other blood relatives of the adopted person were relieved of all of their legal duties and divested of all their legal rights with regard to the adopted person, except as provided in Section 572(B) of Title 9 of the Revised Statutes. In the same Act, Section 572 was amended by adding sub-section (B) as follows:
"Notwithstanding any provision of law to the contrary contained in Article 214 of the Louisiana Civil Code, in the event of an adoption, the natural parents of a deceased party to a marriage dissolved by death may have limited visitation rights to the minor child or children of the marriage *546 dissolved by death; provided the natural parents of a deceased party prove that they have been unreasonably denied visitation rights and such limited visitation rights would be in the best interest of the minor child or children; and provided further, that the adoption takes place after the parent whose parents are seeking visitation rights is deceased. The court shall consider all relevant factors in reaching a conclusion, including without limitation psychological evaluation, and it may order an investigation by the Department of Health and Human Resources." (See footnote 3)
In substance the amendments are designed to provide that the natural parents of a deceased parent of minor children who have been adopted may have limited visitation rights under certain circumstances.
These amendments, if applicable to the facts of this case, would entitle the paternal grandparents in the case at bar to limited visitation rights, notwithstanding the fact that the children are considered for all purposes as the legitimate children of the adoptive father by the terms of Article 214 of the Civil Code, provided the grandparents were able to establish certain prerequisites set forth in Section 572(B).
The grandparents urge in their brief dated July 6, 1978, that the foregoing amendments, which at that time had been passed by the legislature but not yet signed by the Governor, are retroactively applicable to this case when enacted and promulgated. If signed by the Governor, they assert, the issues presented to this Court would become moot. According to the authorities they cite, these amendments are curative in character. As curative legislation these enactments are applicable to cases on appeal, even though the facts and circumstances in litigation were ruled upon in the trial court prior to passage of the amendments. As amended, according to the grandparents, Article 214 of the Civil Code and Section 572(B) of Title 9 of the Revised Statutes adopt the public policy arguments presented in their brief.
In support of the claim that the issues of this case are moot they cite the decisions of the Second Circuit in Jackson v. Jackson, 275 So.2d 456 (La.App. 1973) and Fullilove v. U.S. Casualty Co. of New York, 129 So.2d 816 (La.App. 1961). No answer to this contention is presented by the Sonniers. The issue thus presented stands at the threshold of this case.
In Jackson v. Jackson the Second Circuit considered a suit for reduction of alimony and support awarded to a wife and four minor children. The case was tried on May 4, 1971 and judgment was rendered on October 4, 1972, reducing the alimony and support awards. In the interim between the trial date and rendition of judgment, Article 37 of the Civil Code was amended to prescribe that persons of the age of eighteen were to be considered of full age of majority, fully emancipated and adults.
In its review the Court of Appeal held:
"The trial judge correctly applied the latest expression of the law to the case by basing his decision as to support for . . . [the children over eighteen] on the amendment to Article 37. Likewise, this court must decide this appeal by applying the law as it now exists and not on the basis of what the law may have been at the time of the trial of the case. It is the duty of an appellate court to adjudge a case before it in accordance with the law existing at the time of its own decision, even if it requires reversing a judgment that was entirely proper at the time of its rendition."
A similar conclusion was reached in Fullilove v. U.S. Casualty Co. of New York, where a constitutional amendment authorizing the legislature to waive the State's immunity from liability, as well as immunity from suit, operated retrospectively. Cf. Juneau v. City of Shreveport, 146 So.2d 245 (La.App. 1962) and Musgrove v. Calcasieu Parish Police Jury, 200 So.2d 344 (La.App. 1967).
In a 1946 decision in Allison v. Wideman, et al., 210 La. 314, 26 So.2d 826, this Court held that the suits of coproprietors of mineral rights in land were abated by the enactment *547 of a statute providing that the liberative prescriptive period for adult parties owning jointly with minors, would not be extended beyond ten years because of joint ownership with minors. The adults had claimed the minerals for more than ten years and the land was therefore released from the mineral servitude. This holding effectively held that a law, which was changed during the pendency of a suit, could be applied by this court even though it involved the reversal of a trial court decision based upon the law which existed at the time of its decision.
In Hymel v. Central Farms & Shipping Co., 183 La. 991, 165 So. 177 (1935), this Court abated an appeal from a judgment rejecting an application for moratorium. The statute considered in the decision was repealed and superseded by a statute enacted after the decision in the trial court. In the unanimous opinion Chief Justice O'NIELL wrote:
"It is well settled also that, if the law on which a judicial proceeding is founded is repealed, or superseded and in effect repealed, by a statute enacted while the proceeding is pending in court, the proceeding is thereby abated. Todd v. Landry, 5 Mart. (O.S.) 459, 12 Am.Dec. 479; State v. Johnson, 12 La. 547; Cooper v. Hodge, 17 La. 476; Frey v. Hebenstreit, 1 Rob. 561; Doss v. Board of Commissioners of Mermentau Levee District, 117 La. 450, 41 So. 720; Western Union Telegraph Co. v. Louisville & Nashville R. Co., 258 U.S. 13, 42 S.Ct. 258, 66 L.Ed. 437; United States v. Chambers, 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510."
A wife brought suit involving a claim to paraphernal property in Garlick v. Dalbey, 147 La. 18, 84 So. 441 (1920). Her right to sue without the authorization of her husband was put at issue in defendant's answer. After final judgment in the trial court, Act 94 of 1916 was enacted dispensing married women from the necessity of being authorized by their husbands to stand in judgment in matters relating to their paraphernal property. Because the case had been fully tried below as though the wife had authority to stand in judgment, this Court found no reason why the case should not be finally disposed of on appeal. In doing so the Court recognized the applicability of Act 94 of 1916 to the case pending before it.
This Court has held that if judgment be correctly given under a law which is repealed pending the appeal, this Court is bound to reverse it. State v. Johnson, 12 La. 547 (1838). And this principle was approved and applied in Cooper v. Hodge, 17 La. 476 (1841), where plaintiff sought an order to render defendant liable on the bail of one M. Hunt against whom plaintiff had obtained judgment and sought unsuccessfully to obtain satisfaction. The object of the bail was to produce Hunt for imprisonment until the debt was satisfied. Defendant contended that he was released from any obligation on the bail bond by the act abolishing imprisonment for debt which was enacted during the pendency of the proceedings. The trial judge was of the opinion that on repeal of a law every proceeding begun but not perfected under it, becomes absolutely void. With this opinion this Court agreed. See also Frey v. Hebenstreit, 1 Rob. 561 (La. 1842).
Taxpayers sued to restrain a levee board from taking any action under an act of the legislature authorizing the board to organize on the grounds that the act was unconstitutional. During the pendency of the proceeding the legislative act authorizing the board to organize was repealed. This Court dismissed the suit. Doss v. Board of Commissioners of Mermentau Levee District, 117 La. 450, 41 So. 720 (1906).
Although the point has not been argued, this case cannot be decided without considering the effect of Article 8 of the Civil Code. That Article provides that "A law can prescribe only for the future; it can have no retrospective operation, nor can it impair the obligation of contracts." The concept of nonretroactivity of legislation is also embodied in Section 23 of Article I of the Constitution prohibiting the enactment of ex post facto laws.
*548 The principle thus established is the necessary safeguard of individual interest. There would be no security for private persons, if their rights, their fortune, their personal status, the effects of their acts and of their contracts, could be questioned, modified or suppressed at any moment because the lawmaker had changed his mind. The general interest, which is here but the aggregate of individual interest, therefore requires that what has been done regularly under the aegis of the law, be considered valid, and consequently, that it remain stable, even after a change in legislation. Planiol, Vol. 1, No. 240, Treatise on the Civil Law (12 ed. 1939).
Although well-established, the principle of non-retroactivity is subject to exceptions.
Some changes in the law are applicable to all situations, past, present and future. Laws which determine jurisdiction and procedure are applicable, from the date of their promulgation, to all law suits, even to those which bear upon facts and acts of a prior date. They even apply to pending law suits as the decisions already cited demonstrate. These laws are remedial in character concerned with procedure, not substantive rights. They do not impair the obligations of contracts. Planiol, Vol. 1, No. 258.
Another example is interpretive laws which determine the meaning of existing laws. In a sense they explain and interpret existing laws or add to them provisions which the lawmaker believes to be salutary. In such a case it is not the interpretive law but the original which applies. These laws are curative in character, and the line between this intention of the lawmaker and the enactment of new provisions is tenuous and may result in eroding the principle of non-retroactivity. Planiol, Vol. 1, No. 251.
When the intervention of a court is necessary to bring about a juridical solution (for instance a decree revoking visitation rights as in this case) there will be no retroactivity and the court will apply the law in force at the time the judgment is pronounced. The visitation rights at issue here have not been exercised completely; there is an expectation that they will be exercised in the future during the duration of the law as amended by Act 458 of 1978. Exercise of these rights in the future, therefore, are properly the province of the legislature to regulate. What has transpired in the past in this regard is not affected.
Our decisions have embodied these principles and we find them applicable to the problem before us.
Accordingly, for the reasons assigned, this case is remanded to the trial court for consideration in the light of the amendments to Article 214 of the Civil Code and Section 572 of Title 9 of the Revised Statutes as contained in Act 458 of 1978. In particular, the court on remand shall hold a hearing without delay to determine the right of the natural parents of the deceased natural father to limited visitation rights with the minor children. Limited visitation rights may be granted provided the natural parents of the deceased natural father of the children have been unreasonably denied visitation rights and such limited visitation rights would be in the best interest of the minor children. The court shall consider all relevant factors in reaching a conclusion, including, without limitation, psychological evaluation, and it may order an investigation by the Department of Health and Human Resources.
DENNIS, J., concurs and assigns reasons.

APPENDIX
1. La. Rev.Statute 9:572

§ 572. Visitation rights of grandparents
If one of the parties to a marriage dies, or the obligation to live together is terminated by an action of separation from bed and board or the marriage is terminated by divorce, and there is a minor child or children of such marriage, the parents of the deceased, or separated, or divorced party without custody of such minor child or children, may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such *549 visitation rights would be in the best interest of the child or children.
Added by Acts 1972, No. 4, § 1; Amended by Acts 1975, No. 614, § 1.
2. La. Civil Code Art. 214

Art. 214. Reciprocal rights and duties of adopter and adopted
Art. 214. Married persons must concur in the adoption of another person. One of them cannot adopt without the consent of the other.
The adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent or parents, including the right of the adopted person or his lawful descendants to inherit from the adoptive parent or parents or the relatives of the latter by blood or by adoption, and the right of the adoptive parent or parents or the relatives of the latter by blood or by adoption to inherit from the person adopted or his lawful descendants, in the same manner and to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent or parents.
If the adoptive parent is married to a blood parent of the adopted person, the relationship of that blood parent and his blood relatives to the adopted person shall remain unaltered and unaffected by the adoption. Otherwise, upon adoption: the blood parent or parents and all other blood relatives of the adopted person are relieved of all of their legal duties and divested of all of their legal rights with regard to the adopted person, including the right of inheritance from the adopted person and his lawful descendants; and the adopted person and his lawful descendants are relieved of all of their legal duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them. (As amended Acts 1958, No. 514, § 1.)

3. Act 458 of 1978

An Act to amend and reenact Article 214 of the Louisiana Civil Code and Section 572 of Title 9 of the Louisiana Revised Statutes of 1950, to provide that the natural parents of a deceased parent of a minor child or children who have been adopted may have limited visitation rights under certain circumstances.
Be it enacted by the Legislature of Louisiana:
Section 1. Article 214 of the Louisiana Civil Code and Section 572 of Title 9 of the Louisiana Revised Statutes of 1950 are hereby amended and reenacted to read as follows:
Art. 214. Reciprocal rights and duties of adopter and adopted
Art. 214. Married persons must concur in the adoption of another person. One of them cannot adopt without the consent of the other.
The adopted person is considered for all purposes as the legitimate child and forced heir of the adoptive parent or parents, including the right of the adopted person or his lawful descendants to inherit from the adoptive parent or parents or the relatives of the latter by blood or by adoption, and the right of the adoptive parent or parents or the relatives of the latter by blood or by adoption to inherit from the person adopted or his lawful descendants, in the same manner and to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent or parents.
If the adoptive parent is married to a blood parent of the adopted person, the relationship of that blood parent and his blood relatives to the adopted person shall remain unaltered and unaffected by the adoption. Otherwise, upon adoption: the blood parent or parents and all other blood relatives of the adopted person, except as provided by R.S. 9:572(B) are relieved of all of their legal duties and divested of all of their legal rights with regard to the adopted person, including the right of inheritance from the adopted person and his lawful descendants; and the adopted person and his lawful descendants are relieved of all of their legal *550 duties and divested of all of their legal rights with regard to the blood parent or parents and other blood relatives, except the right of inheritance from them.
§ 572. Visitation rights of grandparents
A. If one of the parties to a marriage dies, or the obligation to live together is terminated by an action of separation from bed and board or the marriage is terminated by divorce, and there is a minor child or children of such marriage, the parents of the deceased, or separated, or divorced party without custody of such minor child or children, may have reasonable visitation rights to the child or children of the marriage during their minority, if the court in its discretion finds that such visitation rights would be in the best interest of the child or children.
B. Notwithstanding any provision of law to the contrary contained in Article 214 of the Louisiana Civil Code, in the event of an adoption, the natural parents of a deceased party to a marriage dissolved by death may have limited visitation rights to the minor child or children or the marriage dissolved by death; provided the natural parents of a deceased party prove that they have been unreasonably denied visitation rights and such limited visitation rights would be in the best interests of the minor child or children; and provided further, that the adoption takes place after the parent whose parents are seeking visitation rights is deceased. The court shall consider all relevant factors in reaching a conclusion, including without limitation psychological evaluation, and it may order an investigation by the Department of Health and Human Resources.
Section 2. If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable.
Section 3. All laws or parts of laws in conflict herewith are hereby repealed.
Approved July 10, 1978.
DENNIS, Justice, concurring.
While I agree with the result reached by the majority, I believe that La. R.S. 9:572 (1975) entitled the grandparents to reasonable visitation rights to the minor children if such visitation rights were found to be in the best interests of the children. Thus the retroactivity question need not have been considered.
NOTES
[1] A full copy of the statute is contained in an appendix to this opinion.
[2] A full copy of Article 214 prior to its amendment is contained in an appendix to this opinion.
[3] The complete text of Act 458 of 1978 appears in the appendix.