692 So.2d 458 (1997)
Joseph BROWN, Jr., Plaintiff-Appellee,
v.
Mary Debra Louis BROWN, Defendant-Appellant.
No. 96-743.
Court of Appeal of Louisiana, Third Circuit.
February 26, 1997.
Grady M. Spears, Lafayette, for Joseph Brown, Jr.
*459 Valerie Gotch Garrett, Lafayette, for Mary Debra Louis Brown.
Before THIBODEAUX, COOKS, WOODARD, SULLIVAN and GREMILLION, JJ.
GREMILLION, Judge.
The defendant, Mary Debra Louis Brown, appeals the judgment of the trial court awarding joint custody of the two minor children of the marriage, Melissa Gaye Brown, born November 1, 1981, and Terry Lynn Brown, born July 21, 1983, to her and her former husband, the plaintiff, Joseph Brown, Jr. For the following reasons we reverse the judgment of the trial court and remand the case for further proceedings consistent with this opinion.

FACTS
Mary left the matrimonial domicile on April 7, 1994, with the two children and moved in with her mother. Joseph filed a petition for divorce under La.Civ.Code art. 102 on April 24, 1995 and requested provisional joint care and custody of the children. The hearing on the custody matter was held on September 15, 1995. However, during her testimony, Mary Brown admitted to having an affair with a co-worker, Robert Stevenson, prior to the separation. In light of this development, the trial court continued the matter until December 19, 1995. On September 21, 1995, Joseph amended his petition and asked that divorce be granted on the grounds of adultery in accordance with La.Civ.Code art. 103. At the conclusion of the December 19, 1995 hearing, the trial court granted the divorce and awarded joint custody with each parent granted domiciliary status on a six-month rotating basis. Joseph was granted custody from January 1 to June 30 of every year while Mary was awarded custody from July 1 to December 31. The trial court further awarded visitation to the non-custodial parent to be exercised on alternating weekends and holidays which were defined as Mardi Gras, Easter/spring break, Thanksgiving, Christmas, and New Years.

ASSIGNMENTS OF ERROR
Mary asserts the following assignments of error:
(1) the trial court disregarded the preference of the children;
(2) the trial court disregarded the testimony of Joseph Brown, Jr., Mary Brown, Melissa Brown, Davita Brown, and Terri Brown relative to Mary Brown being a good mother;
(3) the trial court held Mary Brown's adulterous affair against her in making the custody decision;
(4) the trial court erred in considering that the children lived in the overcrowded home of the maternal grandmother; and
(5) the trial court imputed the responsibility of the children's lack of communication with the father to the mother.
Because the trial judge issued no written or oral reasons, we cannot tell what evidence was relied on in reaching this decision. As such, we will review the entire record in light of the standards used to determine custody.

CUSTODY
Absent a clear showing of an abuse of discretion, the trial court's award of custody will not be disturbed. Mayeux v. Mayeux, 93-1603 (La.App. 3 Cir. 6/1/94); 640 So.2d 686. Each child custody case must be viewed in light of its unique facts and circumstances with the principal goal of reaching a decision which embodies the best interest of the children. Muller v. Muller, 94-281 (La.App. 3 Cir. 10/5/94); 643 So.2d 478. "In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." La.Civ.Code art. 131. In the absence of an agreement by the parents concerning the custody of the children, or if the agreement is found not to be in the best interest of the children, "the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent." La.Civ.Code art. 132. However, joint custody does not mandate *460 fifty-fifty sharing of physical custody; all that is required is substantial equality of time depending on the age of children, parental situations, and other factors relevant to child custody disputes. Page v. Page, 96-69 (La.App. 3 Cir. 5/8/96); 673 So.2d 1317.

DISCUSSION
In support of the trial court's ruling, Joseph cites the decision of this court in Bynog v. Bynog, 95-173 (La.App. 3 Cir. 7/26/95); 663 So.2d 86, and the First Circuit's decision of Remson v. Remson, 95-1951 (La.App. 1 Cir. 4/4/96); 672 So.2d 409, for the proposition that the six-month custodial plan is mandated by law. After a careful review of these cases, we find that this reliance is misplaced.
In Bynog, the trial court was confronted with a situation in which the mother moved to Arkansas while the father remained in Louisiana. The trial court granted joint custody to the parents naming the father the domiciliary parent and granting the mother visitation on alternating weekends, major holidays, plus four separate one week periods. Additionally, the trial court stated that the mother could not exercise these visits outside the jurisdiction of this state. At the time this decision was rendered, La.R.S. 9:335(A)(2)(b) provided: "[t]o the extent it is feasible, physical custody of the children shall be shared equally." (emphasis added.) This court found the language in La.R.S. 9:335(A)(2)(b) to be mandatory and amended the trial court's judgment and awarded each parent physical custody for six-month periods with the other parent being granted reasonable visitation during the period they did not have physical custody.
Bynog is clearly distinguishable from the case sub judice. In that case, the children were of pre-school age and the parties lived in separate states. Perhaps in that situation, physical custody for six-month periods might aid in fostering a close relationship with each parent. However, in the present scenario, Melissa and Terry are teenagers and their parents live in the same town. We feel that there are alternatives to a strict and mechanical six-month division of domiciliary status that would continue the present relationship the children have with their parents.
Furthermore, the legislature amended La.R.S. 9:335(A)(2)(b) in 1995 and it now reads as follows: "To the extent feasible and in the best interest of the child, physical custody of the children should be shared equally." (emphasis added). This amendment, by adding the phrase "and in the best interest of the child" and substituting "should" for "shall," strengthens the best interest of the child standard as the primary concern in custody determinations.
Although we are mindful that the petition in the case sub judice was filed before the legislature amended this statute, we are compelled to apply the law as it is written now. In Segura v. Frank, 93-1271, p. 15-16 (La.1/14/94); 630 So.2d 714, 725, cert. denied, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), the supreme court addressed the effect of an amendment to a law pending the outcome of a suit:
The general rule is that appellate courts will not consider issues raised for the first time on appeal. See, e.g., Fried v. Bradley, 219 La. 59, 87, 52 So.2d 247, 257 (1950), and cases cited therein. Another general rule, however, is that an appellate court is bound to adjudge a case before it in accordance with the law existing at the time of its decision. See Dripps v. Dripps, 366 So.2d 544 (La.1978), and cases cited therein. Where the law has changed during the pendency of a suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment which was correct under the law in effect at the time it was rendered. See id. at 547-48. Needless to say, where the law has changed after the trial court's decision, the applicability of the new law can be argued for the first time only on appeal.
In this situation, we find that the application of La.R.S. 9:335 in this suit is permissible. In Dripps v. Dripps, 366 So.2d 544, 548 (La.1978), the supreme court reasoned that:
When the intervention of a court is necessary to bring about a juridical solution (for instance a decree revoking visitation rights as in this case) there will be no retroactivity and the court will apply the *461 law in force at the time the judgment is pronounced. The visitation rights at issue here have not been exercised completely; there is an expectation that they will be exercised in the future during the duration of the law as amended by Act 458 of 1978. Exercise of these rights in the future, therefore, are properly the province of the legislature to regulate. What has transpired in the past in this regard is not affected.
Because we find the scenario in Dripps analogous to the one at hand, we feel it is proper to extend this reasoning to custody determinations.
In Remson, 672 So.2d at 412, the court, citing La.R.S. 9:335 as amended in 1995, found that the law mandated an equal sharing of physical custody, stating:
L.S.A.-R.S. 9:335 enacted by Acts 1993, No. 261, § 5, and the previous amendments to L.S.A.-C.C. art. 131(D) as amended by Acts 1993, No. 905,§ 1, represent a substantial departure from prior law. Previously, the courts consistently held that joint custody did not mean a 50-50 sharing of time. Brazan v. Brazan, 93-2369 (La.App. 1 Cir. 6/24/94), 638 So.2d 1176. However, the legislative amendments indicate a clear intent to foster an equal sharing of custody when it is feasible and in the best interests of the children. We believe that the best interest of the child remains the paramount concern in making custody determinations; however, that interest must be balanced with a parent's right to equally share the physical custody of the child where feasible. See Bynog v. Bynog, 95-173 (La.App. 3d Cir. 7/26/95), 663 So.2d 86.
(footnote omitted).
We decline to adopt the assertion that the law mandates an equal sharing of physical custody. La.R.S. 9:335(A)(2)(b) does not put the two on equal footing. That portion of the statute reads, "[t]o the extent it is ... in the best interest of the child, physical custody of the children should be shared equally." La. R.S. 9:335(A)(2)(b). Clearly, a prerequisite for the equal sharing of physical custody is that it be in the best interest of the children.
Furthermore, we disagree with the statement that, although the best interest of the child is still the paramount concern, this interest must be balanced with the parent's right to equally share the physical custody of the child where feasible. If the best interest of the child is paramount, it cannot be balanced with the parent's right to equally share custody.
La.Civ.Code art. 134 provides factors to be taken into consideration by the court when making the determination of what is in the best interest of the child.[1] Although we recognize that one factor should not, by itself, be determinative of the issue of custody, in this case, taking into account the age of the children at the time of the hearing, twelve and fourteen, their preference should have been given more weight by the trial court than it obviously was.
*462 Melissa and Terry testified that when their mother left the matrimonial domicile, they were told that they could stay with their father, but they decided that they wanted to go with their mother. They testified that, although they loved their father and felt they had a good relationship with him, they felt closer to their mother because she has been the primary caretaker and the one to whom they went whenever problems arose. We find that their testimony was sincere and credible and also supported by the testimony of Mary and their older sister, Davita.
While we agree that an equal sharing of the children by the parents should be ordered by the trial court when feasible and in the best interest of the children, we reject the notion that a fifty-fifty or a six-month sharing plan is necessarily in the best interest of the children. Certainly, the Legislature made the same assessment when it amended the statute to its current reading. That is especially true in the instant case where the children expressed a desire to stay with their mother who had been their primary caregiver. Further, we believe the intent of the statute can be achieved, and still provide the children with the stability of a primary caregiver and an equal or near-equal sharing of the children with the other parent, by decreeing one parent as the domiciliary parent and providing the other parent with substantial custodial privileges on a frequent and continuing basis. We, therefore, reverse the trial court's decision and remand for further proceedings consistent with this opinion and in the light of the 1995 amendment to La.R.S. 9:335.

CONCLUSION
For the reasons stated above, the decision of the trial court is reversed and remanded for further proceedings consistent with this opinion. Costs of this appeal shall be divided equally between the parties.
REVERSED AND REMANDED.
WOODARD, J., dissents.
NOTES
[1] Art. 134. Factors in determining child's best interest

The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.